# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE BRATCHER, | ) Case No.: 11cv01092 DLB |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| vs. | ) SOCIAL SECURITY COMPLAINT |
| MICHAEL J. ASTRUE, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Yvonne Bratcher ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed her application on March 14, 2008, alleging disability since February 13, 2008, due to back and right foot problems, hepatitis C and mental problems. AR 172-177, 246-251. After the application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 63, 71, 111-112. On November 2,

2010, ALJ Stephen Webster held a hearing in Fresno, California. AR 28-62. He issued a decision denying benefits on November 19, 2010. AR 11-23. On April 7, 2011, the Appeals Council denied review. AR 4-6.

Hearing Testimony

ALJ Webster held a hearing on November 2, 2010, in Fresno, California. Plaintiff appeared with her attorney, Melissa Proudian. Vocational expert ("VE") Thomas Dachelet also appeared and testified. AR 28.

Plaintiff testified that she was born in 1956. She is not married and has three adult children. AR 34. Plaintiff never had a driver's license. She is able to take care of her personal grooming needs and is able to cook and do laundry. She can also clean up, but she has to lie down sometimes. AR 35. Plaintiff watches about three hours of television at night and listens to music. She does not read because she has a problem with her eyes. Plaintiff is also able to attend church. AR 36.

Plaintiff graduated high school and took college courses once, but stopped. She also has training as a Certified Nursing Assistant, though her license has expired. AR 36-37.

Plaintiff testified that she has problems with hepatitis S, her right foot, depression and bladder control. AR 38-39. Plaintiff receives treatment for her physical problems about once a month and is supposed to start talking to a doctor soon for her depression. AR 39-40.

Plaintiff thought she could sit for about 15 minutes and then asked if she could stand because she was hurting. She thought that she could stand for about 15 minutes and walk about half a block. Plaintiff estimated that she could lift 14 pounds at most. AR 40.

When questioned by her attorney, Plaintiff explained that she has pain in her right foot about every 30 minutes. To treat the pain, she lies down most of the time. AR 42-43. Plaintiff fractured her foot in 2008 and wears a splint. She had physical therapy, which helped, but she still cannot put all of her weight on her right foot because it's too painful. AR 43-44. Plaintiff is

also unable to walk on uneven surfaces, such as grass or gravel, and cannot walk up a flight of stairs well.  She has to take her time walking on or off a curb.  AR 43-44.  Plaintiff takes Vicodin for the pain, which takes away the pain for about 45 minutes.  AR 44.  Vicodin sometimes makes her nervous or jittery, and the medication she takes for high blood pressure sometimes makes her dizzy or drowsy.  AR 45.

Plaintiff also has a throbbing pain in her right knee almost all the time.  For relief, she lies down until it stops hurting a little.  AR 46.  Plaintiff lies down twice a day, for about two hours a time, and this helps with the pain.  AR 46.

Plaintiff further testified that she thought she had a slight heart attack two weeks ago.  She has chest pain every time she moves around too much and has to lie down to relieve it.  AR 48-49.  Plaintiff had stents placed in her heart in May 2008 or 2009 and takes Plavix and aspirin daily.  AR 49.  She also has asthma and gets short of breath sometimes at night.  AR 49-50.  Too much walking or cleaning up triggers shortness of breath.  Plaintiff uses an inhaler twice a day, and it sometimes helps.  AR 50-51.  She smokes a pack of cigarettes a day.  AR 55.

Plaintiff also has post-traumatic stress disorder ("PTSD") and gets nervous almost every day.  AR 51.  She explained she thinks of her son every day and that when she does, her chest starts hurting.  AR 52.  Plaintiff also has panic attacks every two weeks, lasting about 30 minutes.  AR 52-53.  She experiences headaches, chest pain and fatigue during the attack and lies down or sleeps for relief.  AR 53.  Plaintiff has trouble concentrating and thought she could pay attention for about ten minutes before needing a 30 minute break.  AR 53.

Plaintiff testified that she is also depressed every day, and that her depression affects her ability to function.  AR 53.  She doesn't feel very good when she thinks about her son, and then she gets angry and starts having chest pains.  AR 53.  Plaintiff was not taking any medication for anxiety or depression.  AR 54.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work history who could lift 20 pounds occasionally and ten pounds frequently, and sit, stand and/or walk for six out of eight hours.  This person could not work on uneven ground or rough terrain.  The VE testified that this person could perform the light positions of linen-supply load builder, garment sorter, and ampoule filler.  AR 55-57.

For the second hypothetical, the ALJ asked the VE to assume the same person, but with an additional limitation to simple routine and repetitive work.  AR 57-58.  The VE testified that the same positions would be available.  AR 58.

For the third hypothetical, the ALJ asked the VE to assume that this person would have occasional problems maintaining attention, concentration and pace.  The VE testified that there would be no jobs available.  AR 58.

Similarly, if this person needed additional rest breaks two times a day, for two hours at a time, this person could not work.  AR 58.

Medical Record

Plaintiff was seen at Community Medical Centers on October 5, 2007, with complaints of chronic knee pain.  She was diagnosed with right knee pain, most likely osteoarthritis, and given Tylenol.  AR 713.

A chest x-ray dated October 10, 2007, was normal.  AR 727.

In November 2007, Plaintiff continued to complain of chronic right knee pain.  She was diagnosed with chronic right knee pain and given Ibuprofen.  AR 701-707.

Plaintiff fractured her right foot in March 2008.  AR 689.

A March 11, 2008, x-ray of Plaintiff's right knee was negative.  AR 381.

On April 24, 2008, Plaintiff saw Rustom F. Damania, M.D., for a consultive examination.  Plaintiff complained of back pain, hand spasms, heel spurs, right knee pain, hypertension and hepatitis C.  Plaintiff was living in a mission and could do whatever chores were required of her.

Plaintiff also reported anxiety and depression after her brother and son were killed.  On examination, Plaintiff's chest and lungs were clear and heart sounds were normal.  Her gait was normal, range of motion in all areas was normal, motor strength was 5/5 in all extremities and there was no muscle atrophy.  Sensation and reflexes were normal.  Dr. Damania diagnosed hypertension, thoracic spinal pain and low back pain, heel spurs by history and hepatitis C by history.  He opined that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, stand and walk for six hours and sit without restriction.  Plaintiff had no further limitations.  AR 329-332.

Also on April 24, 2008, Plaintiff underwent a psychiatric consultation performed by Shireen R. Damania, M.D.  Plaintiff explained that her 29-year old son was shot to death in 2006 and as a result, she suffers from depression and emotional problems.  She was currently taking Klonopin for anxiety and Ambien to help her sleep.  Plaintiff reported that she was previously diagnosed with bipolar disorder.  She also reported that she was currently applying for work, but she hasn't heard back from the places where she applied.  Plaintiff complained of sleep difficulties and anxiousness.  She was living at "Naomi House," where she did chores during the day and looked for work.  AR 333-335.

On mental status examination, her mood was mildly depressed when she discussed the loss of her son and her affect was broad and appropriate to content and situation.  Plaintiff expressed feelings of helplessness, hopelessness and worthlessness, but denied suicidal ideations. Impulse control and frustration tolerance were within normal limits.  Plaintiff was oriented to time, place and person, and memory for recent and past recall was intact.  Her attention span was within normal limits and she was of average intelligence.  Insight and judgment were fair.  Dr. Damania diagnosed adjustment disorder with depressed mood, bereavement and alcohol abuse, in remission for six months by history.  She opined that Plaintiff could understand, carryout and remember three and four step job instructions, respond appropriately to coworkers, supervisors

and the public, respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision.  AR 335-336.

On May 1, 2008, State Agency physician Ian Ocrant, M.D., completed a Physical Residual Functional Capacity Assessment.  Dr. Ocrant opined that Plaintiff could lift and carry 20 pounds occasionally, ten pounds frequently, stand and/or walk for about six hours and sit for about six hours.  She could occasionally stoop and crouch and could frequently climb, balance, kneel and crawl.  AR 338-342.

State Agency physician Kelly J. Loomis, M.D., completed a Psychiatric Review Technique Form on May 12, 2008.  Dr. Loomis opined that Plaintiff's impairments were not severe and therefore a mental residual functional capacity assessment was not necessary.  AR 345-355.

Plaintiff was admitted to the hospital on July 19, 2008, and discharged on July 20, 2008, with a diagnosis of biliary colic.  AR 597-598.

A September 10, 2008, chest x-ray was normal.  AR 589.

On January 14, 2009, Plaintiff underwent a comprehensive mental health assessment at Fresno County Mental Health.  She complained of daily anxiety, weekly panic attacks once and severe depression since the age of 16.  Plaintiff indicated that she could not relate well to others and could not work.  She was also grieving the 2006 murder of her son.  On examination, her mood was euthymic and her general fund of knowledge was fair.  She was diagnosed with PTSD and panic disorder without agoraphobia and polysubstance dependency.  AR 367-376.

On January 19, 2009, Plaintiff was seen in the emergency room with a cough, chest congestion and mild wheezing.  A chest x-ray was negative.  AR 534.  She was diagnosed with asthmatic bronchitis and instructed to use her inhaler.  AR 522-533.

Plaintiff had a mild heart attack in May 2009 and underwent a successful cardiac catheterization angioplasty.  AR 511-516.

Plaintiff continued treatment at Fresno County Health from May through September 2009, during which time she complained of good days and bad days. AR 359-363. On July 20, Plaintiff reported feeling down because of lack of money and the recent loss of a job at Burger King. AR 363. In September 2009, she reported that she wasn't sleeping well because she was worried about money, though she was looking for a part-time job. Plaintiff was managing "ok" and the therapist indicated that her case was nearing closure because she had reached "a lot of stability." AR 357-358.

Chest x-rays taken on October 5, 2009, were normal. AR 483.

Plaintiff was seen in the emergency room on January 8, 2010, for abdominal pain. AR 452. A chest x-ray taken on January 8, 2010, was normal. AR 451. She was diagnosed with abdominal pain and peptic ulcer disease, and discharged in stable condition. AR 458.

On March 31, 2010, Plaintiff was admitted to the hospital for chest pain. Plaintiff's EKG was normal and chest x-rays showed no acute disease. An abdominal ultrasound was also negative. Plaintiff was discharged the next day. AR 441-443.

On September 15, 2010, Plaintiff was taken to the emergency room for sharp abdominal pain. Chest x-rays showed no evidence of cardiopulmonary disease. She was discharged later that day in stable condition with a diagnosis of abdominal pain. AR 396-413.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of right foot pain, hepatitis C, heart disease and obesity. AR 16. Despite these impairments, she retained the residual functional capacity ("RFC") to perform light work with a requirement to avoid uneven ground or terrain. AR 19. With this RFC, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. AR 21.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv*., 812 F.2d 509, 510 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability and (2) has an impairment or a combination of impairments that is considered "severe" (right foot pain, hepatitis C, heart disease and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) did not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) did not have any past relevant work, but (5) could perform a significant number of jobs in the national economy. AR 16-21.

Here, Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting her subjective testimony.

## **DISCUSSION**

Plaintiff argues that the ALJ erred by relying solely on the medical evidence in rejecting her subjective testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief." *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be

supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand).  Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but not to the extent alleged.  AR 20. Throughout his opinion, the ALJ noted the portions of Plaintiff's testimony that were not supported by the medical evidence.  An ALJ may consider lack of objective medical evidence so long as it is not the <u>sole</u> reason for rejecting a claimant's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).  For example, Plaintiff testified that her high blood pressure was not controlled, but the medical evidence did not support this.  AR 17, 20.  Plaintiff testified that she wore a splint on her right knee, though this was not noted in the medical records.  AR 18. Plaintiff also testified that too much activity triggers her asthma, but numerous examinations revealed clear lungs with no breathing difficulties.  Plaintiff's testimony regarding her breathing difficulties was also undermined by her "full" activities of daily living and by the fact that she continues to smoke a pack of cigarettes a day.  The ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

As for her alleged mental impairments, Plaintiff alleged that she had trouble concentrating and that she did not like to be around others, but she was looking for work and was enrolled in a child development class.  AR 17.  Plaintiff also reported that she hoped to work as a teacher's aide upon completion of the course.  AR 17.  Similarly, although Plaintiff testified to panic attacks every two weeks, this was not supported by her mental health treatment notes.  AR

17. Although Plaintiff complained of panic attacks at her initial Mental Health assessment in January 2009, this complaint was never repeated. AR 367-376.

Continuing with his analysis, the ALJ explained that Plaintiff could care for her personal grooming, cook and do laundry. The ALJ also set forth Plaintiff's statements to Dr. Damania, where she explained that she does the required chores at Naomi House, left to search for work during the day, prepared meals and attended church. AR 17. The ALJ is entitled to consider Plaintiff's daily activities in light of her allegations of disability. *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012). Additionally, the ALJ explained that although Plaintiff testified that she did not visit friends or family, her sister testified that she picks Plaintiff up "on a daily basis" to spend time with her and that Plaintiff visits other relatives. AR 20, 268.

Finally, the ALJ explained that despite her allegations of difficulty concentrating, the Social Security field office noticed no difficulties understanding or concentrating during the application interview. AR 17. Similarly, despite Plaintiff's testimony of physical limitations, the Social Security field office found no difficulties sitting, standing or walking during her interview. AR 18. Plaintiff contends that this is improper "sit and squirm" jurisprudence, but the concern in such cases arises where the ALJ improperly substitutes his lay opinion for the opinions of medical professionals. *See Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985). Here, as one of numerous factors cited in the credibility analysis, the ALJ contrasted the observations of the officer with Plaintiff's allegations. *See eg., Drouin v. Sullivan*, 966 F.2d 1255, 1258 59 (9th Cir. 1992) (ALJ's observations during the hearing, along with other evidence, constitutes substantial evidence). The ALJ is allowed to do so.

For the reasons discussed above, the ALJ's analysis of Plaintiff's subjective testimony was supported by substantial evidence and free of legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Yvonne Bratcher.

IT IS SO ORDERED.

Dated:   **September 17, 2012**               /s/ *Dennis L. Beck*
                                             UNITED STATES MAGISTRATE JUDGE